# CERTIFIED LETTER

I, Delette Lewis, Unit Manager, hereby certify that the attached Residential
Property Additional Insured Endorsement issued to Dr E Dawson of 59755
Highway 1148, Plaquemine, LA 70764, and attaching to policy a true and accurate
copy of the original thereof. Said attachment has been reproduced from our
computer files, which are maintained in the ordinary course of business. The
recordation of said attachment is placed in our computer files as a regular practice
of our business activities and such information was placed in our computers at or
near the time the original was transmitted.

*Delette T. Lewis*

**Delette Lewis**
**Unit Manager**

Sworn and subscribed before me on this date: _Nov 10 2009_

*Darlene Harper*

Notary Public
County_____
State_____

My Commission Expires:_____

Darlene Harper
Notary Public, Gwinnett County, Georgia
My Commission Expires August 2, 2010

EXHIBIT
13



Linda
Silva/MIA/ASSURANT/US

11/03/2009 08:25 AM

To   Denise Hinton/ATL/ASSURANT/US@ASSURANT

cc   Andrew Sessions/ATL/ASSURANT/US@ASSURANT, Pilar
      Banos-Hill/MIA/ASSURANT/US@ASSURANT

bcc

Subject   New Policy Request:  Peter Dawson

Good Morning,

Please forward two complete Certified copies of the policy for the following insured to my attention.

Peter Dawson
59755 Hwy 1148
Plaquemine, LA

Policy No.        ALR218254300
Eff. Dates        6/2/08 thru 6/2/09
Lender/ Loan No.        55170765 / Citi Residential Lending

Thank you for your assistance.

Sincerely,

CITI RESIDENTIAL LENDING, INC.
INSURANCE CENTER
P.O. BOX 11056
ORANGE, CA 92856-8156


DR E DAWSON
59755 HIGHWAY 1148
PLAQUEMINE, LA 70764-5340


Re: ALR15052182543



1100

SFD    **OWNER OCCUPIED**

| AGENCY | | |
|---|---|---|
| Major | Sub | Minor |
| 09000 | 0017 | 0000 |

**AMERICAN SECURITY INSURANCE COMPANY**
**PO BOX 50355, ATLANTA, GEORGIA 30302**
**COMMERCIAL PROPERTY**
**ADDITIONAL INSURED ENDORSEMENT**

POLICY NUMBER:
ALR15052182543

LOAN
NUMBER:
0055170765

ADDITIONAL INSURED - NAMES AND ADDRESS (Street No., City, State, Zip)

DR E DAWSON
59755 HIGHWAY 1148
PLAQUEMINE, LA 70764-5340

NAMED INSURED MORTGAGEE & Address:

CITI RESIDENTIAL LENDING, INC.
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 11056
ORANGE, CA 92856-8156

| POLICY PERIOD ONE YEAR | COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|
| EFFECTIVE DATE: 06/02/2008    EXPIRATION DATE: 06/02/2009 | DWELLING | $382,602 | $3,673.00 |
| EFFECTIVE TIME:  NOON ☐  12:01 A.M. ☒ | | | |
| DESCRIBED LOCATION (if different from mailing address above) | | | |
| 59755 HIGHWAY 1148 | | | |
| PLAQUEMINE, LA 70764 | | | |
| | 2005 FAIR PLAN EMERG    0.05000 | | $183.65 |
| | | | |
| Forms and endorsements which are made a part of this policy at time of issue: | ANNUAL PREMIUM AMOUNT | | $3,673.00 |
| | ANNUAL TOTAL AMOUNT | | $3,856.65 |

MSP-RES(5-91),MSP-RES(8-88),MSP-RES-END-LA (1207),N9720PC (5/07),CP13000A-R(6-05)

Subject to the terms and provisions of the Mortgage Service Program, Residential Property Mortgagee's Policy, including but not limited to the Residential Property coverage form attached hereto, it is agreed that the insurance applies to the property described above and to any person shown as an Additional Insured with respect to such property, subject to the following additional provisions:

a. The above Named Insured Mortgagee is authorized to act for such Additional Insureds in all matters pertaining to this insurance including receipt of Notice of Cancellation, and return premium, if any.

b. The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Insured for the insurance afforded.

c. Loss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee, and the Additional Insureds as their interests may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Insured, at our option.

**Deductibles:**

With respect to all perils except Theft or Vandalism and Malicious Mischief, the sum of $500 shall be deducted from the amount which would otherwise be recoverable for each loss separately occurring. With respect to Theft or Vandalism and Malicious Mischief a $500 per loss deductible applies. With respect to vacant property a $1,000 per loss deductible applies for Theft or Vandalism and Malicious Mischief.

CLAIMS INFORMATION ONLY
1-800-326-7781

ALL OTHER INQUIRIES
1-877-389-3175

PMS-A-LA (Rev.03-06)

08/28/2008
GE3581
05/24/06

## AMERICAN SECURITY INSURANCE COMPANY
### P.O. BOX 50355, ATLANTA, GA 30302

A STOCK INSURANCE COMPANY
HEREIN CALLED THIS COMPANY
INCORPORATED UNDER
THE LAWS OF DELAWARE

## READ YOUR POLICY CAREFULLY



# Residential Property Policy

**This policy provides limited coverage. Please read your policy and all endorsements carefully.**

THIS POLICY JACKET TOGETHER WITH RESIDENTIAL DWELLING FORM, DECLARATIONS AND ENDORSEMENTS, IF ANY, ISSUED TO A FORM A PART THEREOF, COMPLETES THIS POLICY

MSP-RES (5/91)

GJ101

## YOUR RESIDENTIAL DWELLING POLICY
## QUICK REFERENCE

### DECLARATIONS PAGE

Your Name
Location of Your Residence
Policy Period
Coverages
Amounts of Insurance
Deductible

| | Beginning On Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| COVERAGES | 1 |
| PERILS INSURED AGAINST | 1 |
| Other Coverages | 3 |
| Other Structures | 3 |
| Debris Removal | 3 |
| Reasonable Repairs | 3 |
| Property removed | 4 |
| Collapse | 4 |
| CONDITIONS | 4 |
| Policy Period | 4 |
| Other Insurance | 4 |
| Insurance Interests & Limits Of Liability | 4 |
| Concealment or Fraud | 5 |
| Your Duties After Loss | 5 |
| Loss Settlement | 5 |
| Salvage and Recoveries | 6 |

| | Beginning On Page |
|---|---|
| Our Option | 6 |
| Reinstatement | 6 |
| Loss to a Pair or Set | 6 |
| Glass Replacement | 6 |
| Loss Payment | 6 |
| Appraisal | 6 |
| Our Rights of Recovery | 6 |
| Suit Against Us | 7 |
| Abandonment of Property | 7 |
| No Benefit to Bailee | 7 |
| Cancellation | 7 |
| Return of Premium | 7 |
| Liberalization Clause | 7 |
| Waiver of Change of Policy Provisions | 7 |
| Assignment | 7 |

PLEASE NOTE: THERE MAY BE AMENDATORY ENDORSEMENTS.

GJ102

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy "you" and "your" refer to the "Named insured," (Mortgagee) and the "Additional Insured" (Mortgagor) shown in the Declarations. "We," "our," and "us" refer to the Company providing this insurance.

## COVERAGES

This insurance applies to the Dwelling Property described in the Additional Insured Endorsement which has been issued and is Eligible Real Estate within the description of property covered below, and which is not otherwise excluded.

1.  Property Covered
    We cover:
    a.  the dwelling on the Described Location, used principally for dwelling purposes not to exceed four (4) living units including, but not limited to, individually owned townhouses or permanently situated mobile homes;
    b.  structures attached to the dwelling;
    c.  materials and supplies on or adjacent to the Described location for use in the construction, alteration, or repair of the dwelling or other structures on this location; and
    d.  if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

2.  Property Not Covered
    a.  Personal Property of any kind.
    b.  Outdoor trees, shrubs, plants, and lawns.
    c.  Outdoor swimming pools; fences, piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls not constituting a part of buildings; walks; roadways; and other paved surfaces.
    d.  Cost of excavations, grading or filling.
    e.  Foundations of buildings, machinery, boilers or engines which foundations are below the surface of the ground.
    f.  Pilings, piers, pipes, flues, and drains which are underground.
    g.  Pilings which are below the low water mark.
    h.  Land (including land on which the property is located).

## PERILS INSURED AGAINST

We insure against risks of direct loss to covered property only if that loss is a physical loss to property. However, we do not insure losses which are excluded below:

1.  We do not insure for loss involving collapse, other than as provided in Other Coverages 5. However, any ensuing loss not excluded or excepted is covered.
2.  We do not insure for loss caused by:
    a.  freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
        (1) fence; pavement, patio or swimming pool;
        (2) foundation, retaining wall or bulkhead; or
        (3) pier, wharf or dock;

Case 3:09-cv-00995-JJB-DLD    Document 1-3    11/20/2009    Page 7 of 21

b. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

c. constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance;

d. (1) wear and tear, marring, deterioration;

(2) inherent vice, latent defect, mechanical breakdown;

(3) smog-rust, mold, wet or dry rot;

(4) smoke from agricultural smudging or industrial operations;

(5) release, discharge or dispersal of contaminants or pollutants;

(6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings; or

(7) birds, vermin, rodents, insects, or domestic animals.

If any of these cause water damage not otherwise excluded, to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

However, under this Paragraph 2., any ensuing loss not excluded or excepted is covered.

3. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or other structure, unless specifically provided under this policy.

b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudflow; earth sinking, sinkhole, mine subsidence, rising or shifting; unless direct loss by:

(1) fire;

(2) explosion; or

(3) breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

One or more volcanic eruptions that occur within an hour period will be considered as one volcanic eruption.

c. Water Damage, meaning:

(1) flood, surface water, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) water which backs up through sewers or drains. This includes water emanating from a sump pump, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water; or

(3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. Power Failure, meaning the failure of power or other utility service if the failure takes place off the described premises. But, if a Covered Cause of Loss ensues on the described premises, we will pay only for that ensuing loss.

Case 3:09-cv-00995-JJB-DLD Document 1-3 11/20/2009 Page 8 of 21

e. Neglect, meaning your neglect to use all reasonable means to save and preserve property at and after the time of loss.

f. War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. Nuclear Hazard, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

   This coverage does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered. Intentional

h. Loss, meaning any loss arising out of any act committed
   (1) by you or at your direction; and
   (2) with the intent to cause a loss.

4. We do not insure for loss caused by any of the following. However, any ensuing loss not excluded or excepted is covered.

   a. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 3. above to produce the loss;

   b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

   c. Faulty, inadequate or defective:
      (1) planning, zoning, development, surveying, siting;
      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      (3) materials used in repair, construction, renovation or remodeling; or
      (4) maintenance;
      of part or all of any property whether on or off the described premises.

## OTHER COVERAGES

1. Other Structures

   Subject to the provisions of this article, we cover other structures on the Described Location, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures.

   We do not cover other structures:

   a. used in whole or in part for commercial, manufacturing or farming purposes; or

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

   The amount of insurance on other structures shall be limited to 10% of the dwelling coverage as an additional amount of insurance.

2. Debris Removal

   We will pay the reasonable expense incurred by you for the removal of debris from a property loss covered by this policy. Debris removal expense is included in the limit of liability applying to the damaged property.

3. Reasonable Repairs

   We will pay the reasonable cost incurred by you for necessary repairs made solely to protect the property covered by this policy from further damage if there is coverage for the peril causing the loss. Use of this coverage is included in the limit of liability that applies to the property being repaired.

Case 3:09-cv-00995-JJB-DLD    Document 1-3    11/20/2009    Page 9 of 21

4. Property Removed

   Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed, is covered for direct loss from any cause. This coverage does not change the limit of liability that applies to the property being removed.

5. Collapse

   We insure for risk of direct physical loss to Property Covered involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Fire or lightning, windstorm or hail, explosion, riot or civil commotion, aircraft, vehicles, smoke, vandalism, or malicious mischief, breakage of glass or safety glazing material, burglars, falling objects, weight of ice, snow or sleet, accidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a household appliance, sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning system or an appliance for heating water, freezing of plumbing, heating or air conditioning system or of a household appliance.

   b. Hidden decay,

   c. Hidden insect or vermin damage,

   d. Weight of contents, equipment, animals or people,

   e. Weight of rain which collects on a roof,

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

   Collapse does not include settling, cracking, shrinking, bulging or expansion. Collapse does not apply to loss to the following unless damage is caused directly by collapse of a building:

   Awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations, retaining walls, bulkheads, piers, wharves, or docks.

   Coverage for collapse is included in the limit of liability applying to the damaged Covered Property.

# CONDITIONS

1. Policy Period. This Policy applies only to loss which occurs during the policy period.

2. Other Insurance. If there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.

3. Insurance Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. for an amount greater than the interest of the persons insured under this policy; or

   b. for more than the limit of liability that applies, whichever is less.

   If the Described Property is vacant and the mortgage on the property has been declared in default by the mortgagee at the time of a loss, we shall be liable for no more than the Named Insured's interest in the property at the time of loss.

   The Named Insured's interest is represented by the mortgagor's unpaid balance, less unearned interest and finance charges, less unearned insurance premiums, less collection and foreclosure expenses, and less late charges and penalties added to the mortgagor's unpaid balance after the inception date of this policy.

Case 3:09-cv-00995-JJB-DLD     Document 1-3     11/20/2009     Page 10 of 21

4. **Concealment or Fraud.** We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance. We do not provide coverage if you have acted fraudulently or made false statements, relating to this insurance whether before or after loss.

5. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent;

   b. protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

   c. exhibit the damaged property as often as we reasonably require;

   d. submit to signed statements and examinations under oath; and

   e. submit to us, within 60 days after we request, your signed, sworn statement of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) the interest of you and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of the policy; and

      (5) specifications of any damaged building and detailed estimates for repair of the damage.

6. **Loss Settlement.** Covered property losses are settled as follows:

   A. Buildings at replacement cost without deduction for depreciation, subject to the following:

      (1) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

         (a) the limit of liability under this policy applying to the building;

         (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

         (c) the amount actually and necessarily spent to repair or replace the damaged building.

      If the full cost to repair or replace the damaged property is more than $1,000 or 5% of the limit of liability for the Dwelling, we will pay no more than the actual cash value until actual repair or replacement is completed.

      You may disregard these replacement cost loss settlement provisions when making a claim. You may claim loss to buildings on actual cash value basis. If you do, you may make further claim within 180 days after the loss based upon and for any specific additional cost to you actually incurred within that period in replacing the damaged property on a replacement cost basis.

   B. Loss to the following types of property will be settled at the actual cash value of the damaged property at the time of loss. Actual cash value includes deduction for depreciation.

      (1) Structures that are not buildings.

      (2) Antennas, carpeting, awnings, domestic appliances and outdoor equipment, all whether or not attached to buildings.

      We will not pay more than the smallest of:

      (1) the cost to repair or replace the damaged property with property of like kind and quality;

      (2) the actual cash value of the damaged property; or

      (3) the limits of liability of this policy applying to the property.

Case 3:09-cv-00995-JJB-DLD     Document 1-3     11/20/2009     Page 11 of 21

7. Salvage and Recoveries: When, in connection with any loss covered by this policy, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis of what it would have been settled for had the amount of salvage or recovery been known at the time the amount of loss was originally determined. Any amounts thus found to be due any party, including us, shall be promptly paid or reimbursed.

8. Our Option. If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

9. Reinstatement: It is understood and agreed that any claim under this policy shall not reduce the amount of insurance stated on the Declarations page for any other loss occasion.

10. Loss to a Pair or Set. In case of loss to a pair or set, we may elect to:

    a. repair or replace any part to restore the pair or set to its value before the loss; or

    b. pay the difference between actual cash value of the property before and after the loss.

11. Glass Replacement. Covered loss to glass shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

12. Loss Payment. We will adjust all losses with the Named Insured. Payment for loss will be made within 60 days after we reach agreement with the Named Insured, entry of a final court judgement, or the filing of an approved award with us. Loss will be made payable to the Named Insured and the Additional Insured as their interests appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured and the Additional Insured, at the Company's option. No coverage will be available to any mortgagee other than that shown as the Named Insured on the Declarations page of this policy.

13. Appraisal. If the Named Insured and we fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, the Named Insured or we can ask a judge of a court of record in the state of the Described Location to select an umpire. The appraisers will appraise the loss, based on the method of payments specified in the policy for each item. If the appraisers submit a written report of an agreement to us, that amount will be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss.
Each party will pay the appraiser it chooses and his expenses, and equally pay expenses for the umpire and all other expenses of the appraisal.

14. Our Rights of Recovery (Subrogation). In the event of any claim under this policy, we are entitled to all your rights of recovery against another person. You must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.

    When you have made a claim under this policy and also recover from another person, the amount recovered from the other person shall be held by you in trust for us and reimbursed to us to the extent of any damages paid by us under this policy.

Case 3:09-cv-00995-JJB-DLD    Document 1-3    11/20/2009    Page 12 of 21

15. Suit Against Us.  No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

16. Abandonment of Property. You must take all reasonable steps to protect the property which a prudent interested party would take in the absence of this or other insurance.  We need not accept any property abandoned by you.

17. No Benefit to Bailee. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

18. Cancellation.

    a.  Coverage under this policy shall automatically and without prior notice, cancel when the Named Insured no longer has an interest in the Described Property or when the Named Insured has been provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement applicable to the Described Property.

    b.  This policy may also be cancelled by the Named Insured by returning it to us or notifying us in writing of the date cancellation is to take effect.

    c.  We may cancel this policy by mailing notice of cancellation to the Named Insured at the address shown on the Additional Insured Endorsement or by delivering the notice not less than 30 days prior to the effective date of cancellation.

    d.  We will mail to the Named Insured at the address shown on the Additional Insured Endorsement notice of non renewal not less than 30 days before the end of the policy period, if we decide not to renew or continue this policy.

19. Return of Premium. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration rate will be refunded pro rata.

    If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect. The return of premium is not a condition of the cancellation.

20. Liberalization Clause. If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

21. Waiver or change of Policy Provisions. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights. No course of conduct nor any indulgences, waivers, extensions, forebearances, non-enforcement of policy conditions, or the like, extended at or over any time or from time to time by the Company to the Named Insured or anyone shall waive, nullify, or modify any policy provision as to any other occasion or waive, nullify, or modify any other policy provision.

22. Assignment. Assignment of this policy shall not be valid unless we give our written consent.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

Case 3:09-cv-00995-JJB-DLD     Document 1-3     11/20/2009     Page 13 of 21

MSP-RES is changed.

Under **PERILS INSURED AGAINST,** Item 3.h. is deleted and replaced by the following:

h.   Intentional Loss, meaning any loss arising out of any act committed:
    (1)  With respect to loss caused by fire;
        (a)  By or at the direction of the "insured", and
        (b)  With the intent to cause a loss.
    (2)  With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy;
        (a)  By you or at your direction; and
        (b)  With the intent to cause a loss.

Under **CONDITIONS,** the following changes apply:

Paragraph 4. Concealment or Fraud is deleted and replaced by the following:

4.   Concealment or Fraud
    a.   With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:
        (1)  Intentionally concealed or misrepresented any material fact or circumstance;
        (2)  Engaged in fraudulent conduct; or
        (3)  Made false statements;
        relating to this insurance.
    b.   With respect to loss cause by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage, if whether before or after a loss, one or more "insureds" have:
        (1)  Intentionally concealed or misrepresented any material fact or circumstance;
        (2)  Engaged in fraudulent conduct; or
        (3)  Made false statements;
        relating to this insurance.
    c.   However, if the conduct specified under a. or b. above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

Paragraph 5. Your Duties After A Loss, The first sentence of Item e. is deleted and replaced with the following:

e.   submit to us, within 180 days after our request, if the loss which a state of disaster or emergency was declared pursuant to law by civil officials; however, this 180 day period does not commence until the state of emergency or disaster has ended and you have access to your property; or 60 days after our request in all other cases, your signed sworn statement which sets forth to the best of you knowledge and belief:

Paragraph 6. Loss Settlement, Item A. (1)(b) is deleted and replaced by the following:

(b)  the replacement cost of that part of the building damaged with material of like kind and quality, or

Paragraph 8. Our Option, is deleted and replaced by the following:

8.   Our Option.  If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with property of like kind and quality.

Case 3:09-cv-00995-JJB-DLD     Document 1-3     11/20/2009     Page 14 of 21

Paragraph 12. Loss Payment is deleted and replaced by the following:

12. Loss Payment. We will adjust all losses with the Named Insured. The undisputed portion of the loss will be payable within 30 days after we receive proof of loss from the Named Insured. Loss will be made payable to the Named Insured and the Additional Insured as their interests appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured and the Additional Insured, at the Company's option. No coverage will be available to any mortgagee other than that shown as the Named Insured on the Declarations page of this policy.

Paragraph 14. Our Rights of Recovery (Subrogation), is deleted and replaced by the following:

14. Our Rights of Recovery (Subrogation). An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us. If we pay an "insured" for a loss caused by another "insured" who intentionally commits, or directs another to commit, any act that results in loss by fire, the rights of the "insured" to recover damages from the "insured" who intentionally committed, or directed another to commit, such an act are transferred to us to the extent of our payment. The "insured" may not waive such rights.

Paragraph 15. Suit Against Us, is deleted and replaced by the following:

15. Suit Against Us. No one may bring legal action against us unless there has been full compliance with all the terms of the policy and the action is brought within 2 years after the date on which the loss occurred.

Paragraph 18. Cancellation, Items c. and d. are deleted and replaced by the following:

c. We may cancel this policy only for the reasons stated below by letting the Named Insured know in writing of the date cancellation takes effect. The cancellation notice may be delivered to the Named Insured, or mailed to the Named Insured at the mailing address shown on the Additional Insured Endorsement. Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, regardless of the period of time this policy has been in effect, we may cancel at any time by letting the Named Insured know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you, and any other person shown by the policy to have an interest in any loss which may occur thereunder, know at least 60 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

(a) Fraud or material misrepresentation made by or with the knowledge of the Named Insured in obtaining the policy, continuing the policy, or in presenting a claim under the policy.

(b) Activities or omissions on the part of the Named Insured, which change or increase any hazard insured against, including a failure to comply with loss control recommendations.

(c) Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including an increase in exposure due to regulation, legislation, or court decision.

(d) Determination by the commissioner of insurance that the continuation of the policy would jeopardize a "company" solvency or would place the insurer in violation of the insurance laws of this state or any other state.

(e) Violation or breach of the insured of any policy terms or conditions.

(f) Such other reasons that are approved by the Commissioner of Insurance.

This can be done by letting the Named Insured and any other known person shown by the policy to have an interest in any loss which may occur thereunder known at least 30 days before the date cancellation takes effect.

d. We may elect not to renew this policy. We may do so by delivering to the Named Insured and any other known person shown by the policy to have an interest in any loss which may occur thereunder or mailing

Case 3:09-cv-00995-JJB-DLD    Document 1-3    11/20/2009    Page 15 of 21

to the Named Insured at the mailing address shown on the Additional Insured Endorsement and to any other known person shown by the policy to have an interest in any loss which may occur thereunder, written notice at least 60 days before the expiration date of this policy. Such notice will include the Named Insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage. Proof of mailing will be sufficient proof of notice.

Paragraph 19. Return of Premium is deleted and replaced by the following:

19. Return of Premium. If this policy is cancelled, we will return any premium refund due, subject to paragraphs a. and b. below. The cancellation will be effective even if we have not made or offered a refund.

  a. If the Named Insured cancels this policy, we will refund the return premium, if any within 30 days after the date cancellation takes effect. The return premium shall be computed on a pro rata basis.

  b. If we cancel this policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to the Named Insured.

<u>PMS-A is changed.</u>

Paragraph c. is amended to read:

c. We will adjust all losses with the Named Insured. Loss will be made payable to the Named Insured and the Additional Insured, as their interests may appear, either by a single instrument so worded, or by separate instruments payable respectively to the Named Insured and the Additional Insured, at the Company's option. No coverage will be available to any mortgagee other than that shown as the Named Insured on the Declarations page of this policy. Loss will be payable 30 days after we receive satisfactory proofs of loss from the insured or any party of interest.

**ALL OTHER TERMS AND CONDTIONS REMAIN UNCHANGED.**

## Dwelling Insurance Policy Coverage Disclosure Summary

This form was promulgated pursuant to LSA-R.S. 22:1477.

**THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT CHANGE, EXPAND, OR REDUCE THE COVERAGES OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS.**

### **READ YOUR INSURANCE POLICY FOR COMPLETE POLICY TERMS AND PROVISIONS**

## COVERAGE(S) FOR WHICH PREMIUM WAS PAID

**Dwelling**
**Other Structures**

## DEDUCTIBLES

This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.

**NOTICE:** This policy does not set forth a deductible for covered losses caused by hurricane; named storm; wind as defined in the policy. Look at the Additional Insured Endorsement Page of your policy to determine the amount of the deductible that will apply to any claim for damage caused by hurricane; named storm; wind.

## LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY

**FLOOD** - Flood damage is not covered, regardless of how caused, when flood is the peril that causes the loss. Flood water includes, but is not limited to, storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.

Flood Insurance, which is not provided under this policy, may be available through the National Flood Insurance Program (NFIP). NFIP flood insurance may provide coverage for damage to your dwelling and/or contents subject to the coverage limits and terms of the policy.

N9720PC-0507

GE4021
05/14/07

- Excess Flood Insurance may be available under a separate policy, from this or another insurer, if the amount of the primary flood insurance is not enough to cover the value of your property.

- You may contact your producer or insurer for more information on the National Flood Insurance Program and Excess Flood Insurance.

MOLD - Damage caused by Mold is not covered under this policy. However, mold damage is covered if caused by a peril that is not otherwise excluded under this policy.

**FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS**

N9720PC-0507

GE4022
05/14/07

**CLAIM FILING PROCESS**

There may be time limitation for filing a claim and filing of a satisfactory proof of loss. There may also be time limitations forrepairing and replacing damaged property that could cause you to not recover the replacement cost of your property, if applicable.

**PAYMENT OF CLAIMS**

Depending on the terms of the insurance policy, some losses may be paid based on actual cash value (ACV) and others based on replacement cost (RC).

- ACV is the amount needed to repair or replace the damaged or destroyed property, minus the depreciation.
- RC involves the initial payment of actual cash value (ACV) of a loss, and the subsequent payment of the additional amount that is actually and necessarily expended to repair or replace the damaged or destroyed property.

** Refer to your policy for the terms and conditions describing how a particular loss is to be paid.

**PAYMENT AND ADJUSTMENT OF CLAIMS**

Pursuant to LSA R.S. 22:658 and 22:1220, except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and/or a claim for reasonable medical expenses within fourteen (14) days after notification of loss by the claimant.

In the case of a catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty (30) days after notification of loss by the claimant.

All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty (30) days after the receipt of satisfactory proof of loss of that claim.

Failure to make such payment within thirty (30) days after receipt of such satisfactory written proofs and demand therefore or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty (30) days after receipt of a satisfactory proof of loss of that claim may result in a late penalty against the insurer in addition to the payment of the claim.

If the insurer is found to be arbitrary, capricious or without probable cause in settling any property damage claim, the insurer must pay the insured, in addition to the amount of the loss, fifty percent (50%) damages on the amount found to be due from the insurer to the insured, or one thousand ($1,000.00) dollars, whichever is greater, as well as reasonable attorney fees and costs, if applicable.

**EFFECTIVE APRIL 1, 2007**

N9720PC -0507

GE4023
05/14/07



**ASSURANT**
Solutions



**ASSURANT**
Specialty
Property

## Privacy Policy

You are a valued customer and we strive to meet your privacy concerns. We want to make sure your personal information is protected and that you understand the policies that protect you. There are several legal terms in our privacy policy that we are required to use. We've tried to provide easy-to-understand explanations of the most frequently used legal terms. You'll find the same terms used in many companies' privacy policies.

Assurant Solutions companies and other insurers that operate under the Assurant Solutions Privacy Policy ("we") provide insurance, service contracts and membership products. Our products are offered on behalf of other companies and through our agents. These other companies may be banks; finance companies; retailers; utilities; automobile dealers; manufactured housing and mortgage companies. Those companies that qualify as financial institutions must give our Privacy Policy to you each year. If you have asked not to be solicited, that request is still in effect. You do not need to contact us again. This is not a solicitation. You do not need to respond.

This Privacy Policy gives you examples of the types of data we collect, use, share or disclose; and the kinds of companies with whom we may share such data. These examples serve only as illustrations; they should not be considered all of the data we may collect, use or share. Also, we will comply with state privacy laws that may apply to data about you. Below is our privacy pledge to you:

*Our Privacy Principles:*

- We do not sell your personal information.
- We do not share customer medical information with anyone within the Assurant Solutions family of companies unless you expressly authorize the sharing, or it is permitted or required by law.
- We do not allow those with whom we do business to use our customer information for their own marketing purposes.
- We contractually require any person or business providing products or services on our behalf to safeguard Assurant Solutions customer information.

### Information We May Collect

Types of information we may collect and how we gather it:

- From you (or provided to us on your behalf), on applications and other forms you submit to us; for example: your name; address; telephone number; employer; and income.
- For your transactions with our companies or other nonaffiliated parties; for example: your name; address; telephone number; age; credit card use; insurance coverage; transaction history; claims history; and premiums.
- From consumer reporting agencies, public records and data collection agencies; for example: your obligations with others and your creditworthiness.
- From health care providers, such as doctors and hospitals; for example: your past or present health condition. Health data will be collected only if we need to find out if you are eligible for coverage, process claims, **only** to prevent fraud, as authorized by you or as the law may permit or require. NOTE: We collect health data manage a health-related product or service; for example: life or disability insurance, for which you applied.
- From you when you enroll, request a service, or file a claim on one of our websites; for example: your name, address, contract number, credit card issuer and account number, personal identification number, e-mail address, service contract and claim information.
- In some cases, from your visits to our internet websites; for example: session number and user id. By reviewing the legal notice, terms of use, site agreement or similar named link appearing on any of our websites that you visit you may learn of any "cookies" utilized by us and of any additional information that may be collected from you on that site.

### Information We May Disclose or Share and with Whom

We may share customer information with other entities as needed to deliver products and services to you, provide customer service, or handle your account.

CP13000A-R0605

GE3421
03/26/07

### Disclosures Permitted by Law
We may share customer information as described above and as permitted by law.

### Disclosures for Joint Marketing and Servicing
We may share customer information with persons or organizations inside or outside our family of companies that perform marketing services for us or with whom we have joint marketing agreements.

### Information Regarding Former Customers
We treat the information of prospective and former customers in the same manner as existing customers with respect to the use of personal information.

### Our Security Procedures
We restrict access to customer information to those employees whom we know have a valid business purpose to have access to such data. We maintain physical, electronic and procedural safeguards. We require those who provide services for us and to whom we provide your data to keep your information safeguarded and confidential.

### Changes to this Privacy Policy
We reserve the right to change this Privacy Policy at any time. If we make material changes, we will provide current customers a new notice that describes our new practices and will post it on our Internet websites.

### Notice of Insurance Information Practices
We may collect personal information from persons other than the individual or individuals proposed for coverage. Personal information as well as other personal or privileged information subsequently collected by us may in certain circumstances be disclosed to a third party without your authorization. You have the right to access and correct all personal information collected. A more complete Notice of Insurance Information Practices will be furnished to you upon request.

### New Mexico and Vermont Residents
As required by state law, we will not share your financial or health data without your permission except as allowed by applicable New Mexico or Vermont law.

The following affiliated companies underwrite or market services under the Assurant Solutions service mark or adhere to the Assurant Solutions Privacy Policy. We value our relationship with you. Should you have any questions about our Privacy Policy, please write to us at Assurant Solutions Privacy Office, Post Office Box 979047, Miami, FL 33197-9047 or e-mail us your question at theprivacyoffice@assurant.com.

Affiliates:

| | |
|---|---|
| American Bankers General Agency, Inc. | Roadgard Motor Club, Inc. |
| American Bankers Insurance Company of Florida | Safeco Financial Institution Solutions, Inc. |
| American Bankers Life Assurance Company of Florida | Service Delivery Advantage, LLC |
| American Bankers Management Company, Inc. | Standard Guaranty Insurance Company |
| American Reliable Insurance Company | Sureway, Inc. |
| American Security Insurance Company | Time Insurance Company |
| Assurant Services of Puerto Rico, Inc. | Union Security Insurance Company |
| Caribbean American Life Assurance Company | Union Security Life Insurance Company of New York |
| Caribbean American Property Insurance Company | United Family Life Insurance Company |
| Consumer Assist Network Association, Inc. | United Service Protection, Inc. |
| Federal Warranty Service Corporation | United Service Protection Corporation |
| Insureco Agency | Voyager Indemnity Insurance Company |
| Insureco, Inc. | Voyager Property and Casualty Insurance Company |
| Insureco Services, Inc. | Voyager Service Programs, Inc. |
| National Insurance Agency | Voyager Service Warranties, Inc. |
| Reliable Lloyds Insurance Company | |

Non-Affiliates:

| | |
|---|---|
| Ranchers and Farmers Mutual Insurance Company | Southern County Mutual Insurance Company |
| Republic Lloyds | State and County Fire Mutual Insurance Company |

CP13000A-R0605

GE3422
02/26/07